NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 21, 2017[*]
Decided January 5, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-2126

| | |
|---|---|
| ADAMA NJIE,<br> *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 16-C-4223-JES |
| JOSEPH YURKOVICH, et al.,<br> *Defendants-Appellees*. | James E. Shadid,<br>*Chief Judge*. |

## O R D E R

Adama Njie, a practicing Rastafarian, brought suit under 42 U.S.C. § 1983 against 18 officials and staff members at the Hill Correctional Center. He alleged that the defendants interfered with his right to freely exercise his religion in violation of the First, Eighth, and Fourteenth Amendments, and unjustifiably placed a substantial burden on his religious practices in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5. The district

---

[*] We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

judge dismissed the action at screening, holding that it was frivolous and malicious because Njie had pleaded identical claims in a separate lawsuit pending before the same judge, *Njie v. Godinez*, No. 14-1079-JES (C.D. Ill. Aug. 2, 2017). Because not all the claims in this complaint are duplicative, we vacate the district court's judgment.

Njie is a practicing Rastafarian. He asserts that his religious observance requires that his hair grow freely, that he attend regular services at the Rastafarian chapel, and that he abide by strict dietary laws known as the Ital diet. *See Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988) (summarizing principal doctrines of Rastafarianism). In March 2014 Njie filed a § 1983 claim (*Njie I*) against 11 defendants, including some of the named defendants in this case, claiming violations of his First, Eighth, and Fourteenth Amendment rights, as well as violations of RLUIPA. In that first suit, he alleged in relevant part that prison staff denied a contact visit in February 2012 because of his dreadlocks, failed to offer regular Rastafarian chapel services, confiscated religious articles from the Rastafarian congregation, and refused to provide Ital food. He also alleged that the defendants burdened his religious practices in retaliation for his filing grievances at the prison. At screening, 28 U.S.C. § 1915A, the district judge allowed Njie to proceed on claims of retaliation, violations of free exercise of religion and equal protection, and a claim for injunctive relief under RLUIPA against three of the named defendants: Wayne Steele, Joseph Yurkovich, and John Brand. The claims against the remaining defendants were dismissed for failure to state a claim. *See* § 1915A(b)(1).

On January 5, 2015, Njie filed a motion for a temporary restraining order and a preliminary injunction in *Njie I*, asserting that one of the defendants told him that his dreadlocks were to be cut. A week later the judge requested a response within ten days. The response admitted that Njie had been "put on notice" that his hair would be cut but argued that this would not violate his rights. Njie filed a reply, and after getting no response from the court, he filed another emergency motion for a TRO in February.[1] Remarkably, the defendants went forward with the haircut before the judge ruled on the pending motions: On February 17 a "tactical team" forcibly removed Njie from his cell in segregation (where he was placed for refusing a haircut), shackled and restrained

---

[1]The district court's docket shows that the emergency motion was "entered" on February 18, 2015, indicating the date on which the scanned document was uploaded to the CM/ECF system. But the motion is dated February 10 and was likely received by the court before February 18 because the motion sought to enjoin a haircut that by February 18 had already occurred.

him while a barber cut off his dreadlocks. Njie's TRO requests were mooted by this act, but the judge gave Njie 21 days to amend his complaint to include "a claim or claims" related to the involuntary haircut. In his instructions the judge advised Njie that "piecemeal" pleading is not allowed and that the amended complaint must "stand complete" and "contain all claims against all defendants."

More than a year later on May 9, 2016, Njie amended his complaint to include claims that the forcible cutting of his hair was unconstitutional. He added six defendants, including members of the tactical team, and made more factual allegations—specifically that on October 16, 2014, he was denied a contact visit because of his dreadlocks and that he was placed in confinement after refusing to cut his hair. Njie also asserted new claims of conspiracy and retaliation (this time for filing the lawsuit rather than filing grievances). The judge characterized the amended complaint as a motion for leave to amend and sua sponte struck the amended complaint in its entirety. In a summary order, the judge stated that Njie could not join unrelated claims against unrelated defendants in a single lawsuit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

The case proceeded on the claims in the original complaint that survived screening. On May 11, 2016, the court held a hearing on Njie's motion for a preliminary injunction. Warden Stephanie Dorethy testified that Hill has a policy requiring inmates with "unsearchable" hair to voluntarily cut their hair or be subject to an involuntary cutting. She explained that thick dreadlocks raise security concerns because they can be used to conceal weapons or other contraband. Based in large part on Dorethy's testimony, the judge denied the request for a preliminary injunction. He concluded that the prison's grooming policy did not violate the constitution or unduly burden the exercise of religion. The policy, said the judge, furthered the compelling governmental interest of prison security and could not be accomplished through less restrictive means. Following discovery, the defendants moved for summary judgment, which was granted on August 2, 2017. Njie appealed the final judgment, but he failed to pay the docketing fee and his appeal was dismissed.

While *Njie I* was still pending, Njie filed this lawsuit (*Njie II*). In his new complaint, Njie alleges that 18 defendants violated his constitutional rights and RLUIPA. He asserts that in their individual capacities, the defendants denied an Ital diet; denied visitation rights on October 16, 2014; forcibly cut his dreadlocks in February 2015; and wrongfully issued a disciplinary ticket for refusing to cut his dreadlocks. He

also claimed that these acts were part of a conspiracy and done in retaliation for his filing of *Njie I*.

The judge dismissed the complaint in *Njie II* at screening. He found that Njie impermissibly brought claims identical to those he asserted in *Njie I*, citing the claims that the defendants refused to provide him an Ital diet; that he was denied a contact visit on October 16, 2014 (though the complaint in *Njie I* pertained to a contact visit he was denied in February 2012); and that certain defendants failed to respond to his letters and grievances. The judge also rejected the claims regarding Njie's "kidnapping" (i.e. segregation) and the forcible cutting of his dreadlocks because, first, the judge explained, he had given Njie leave to amend his complaint in *Njie I* to bring that claim and he did not do so; and, second, he had already upheld the policy in the order denying Njie's motion for a preliminary injunction. The judge also rejected the claim that Njie had been issued an illegitimate disciplinary ticket for refusing to cut his hair because Njie freely admitted that he refused to cut his dreadlocks.

A district court is permitted to dismiss a complaint at screening if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. § 1915A(b)(1). "Malicious" means "intended to harass," and "frivolous" means obviously lacking merit. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000). In the screening order, the judge found that Njie had filed a lawsuit that was both malicious and frivolous because he impermissibly brought identical claims in two different cases.

On appeal Njie argues that his complaint was improperly dismissed because he filed the new complaint only after the judge told him he had to file a separate suit, instead of amending the complaint in *Njie I*, to add "unrelated" claims. He contends that this second complaint could not possibly assert duplicative claims because they are largely the same ones the district court concluded were "unrelated" in *Njie I*.

Describing the claims as "identical" in one order and "unrelated" in another created a scenario in which Njie could not win, regardless of his efforts to follow the judge's guidance to file a new case. That confusion was compounded by the judge's express instruction that Njie get "all claims against all defendants" into his amended complaint in *Njie I*. The judge did not limit that instruction to the forced-haircut issue, but when Njie filed the amended complaint (albeit after the deadline set by the court), the judge balked at the volume of claims and defendants. It also bears mention that the amended complaint included claims arising out of the first haircut, as instructed, and

although it was the judge who rejected that whole pleading, he later said that Njie did not file an amended complaint. Given the confusing circumstances, it was error to conclude that Njie was acting "maliciously" when it appears he was trying in good faith to follow the judge's instructions by filing the second case.

Further, the judge dismissed the complaint in *Njie II* as frivolous based on the erroneous premise that all the claims are identical to those at issue in *Njie I*. But they are not. For instance, Njie complains in the second suit that the denial of a contact visit in October 2014 was unlawful; in *Njie I* he had complained about a denial in February 2012. Though both times the defendants disallowed the visits because of the dreadlocks policy, at a minimum the separate incidents involved different defendants, all sued in their personal capacities. *See Conner v. Reinhard*, 847 F.2d 384 (7th Cir. 1988) (holding that officers sued in their personal capacities are not in privity with the government). As another example, the complaints in *Njie I* and *Njie II* both claimed retaliation by the defendants, but the latter pegs new retaliatory acts to the filing of the first lawsuit. Njie alleges that after he filed his first complaint, "the defendants took their retaliatory acts to a whole different level," placing him in segregation and forcibly cutting his hair. Nothing in *Njie I* addresses acts performed in retaliation for filing that very lawsuit. And of course the forced haircut itself was not part of the first case. These examples are enough to show that the *Njie II* claims are not all plainly lacking merit, so the complaint should not have been labeled frivolous.

We acknowledge that some overlap exists between the original complaint in *Njie I* and the complaint in this case. But "[n]o rule of federal law requires the dismissal of a second or successive civil suit, even if another concerning the same controversy is pending." *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). Instead, when confronted with parallel lawsuits, we have advised courts to stay successive actions, rather than dismiss them, unless it is clear that dismissal cannot adversely affect any litigant's interest. *Id.*; *Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000) (citing *Deakins v. Monaghan*, 484 U.S. 193, 202–04 (1988)). *But see Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223–24 (7th Cir. 1993) (upholding dismissal when suit is duplicative, meaning "claims, parties, and available relief do not significantly differ between the two actions"). Dismissing the complaint in this case with prejudice adversely affected Njie's interests by denying him an opportunity to assert his additional claims when instead this case should have been stayed pending resolution of his first lawsuit.

Even though Njie's complaint was dismissed prematurely and for the wrong reasons, new wrinkles have arisen from events since he first filed *Njie II*—the denial of the preliminary injunction motion and entry of final judgment in *Njie I*. Specifically, now certain claims or issues might be barred by claim preclusion or issue preclusion. But the only question before us is whether the judge erred in dismissing the complaint in *Njie II*. Because the complaint is neither frivolous nor malicious, our answer is affirmative.

Finally, while we've had this appeal under advisement, Njie moved this court for a temporary restraining order enjoining prison staff from again forcibly cutting his dreadlocks. He writes that the warden and others have indicated that it is time for another haircut. Because we are remanding the case for further proceedings, we deny the motion, though Njie may refile it in the district court on remand.

Accordingly, we VACATE the judgment of the district court and REMAND for proceedings consistent with this order. We DENY the motion for a temporary restraining order filed on January 2, 2018. One matter remains. Njie filed a motion for counsel in this court. We DISMISS that motion as unnecessary in light of the result here.